# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**INTERSTATE RESTORATION GROUP, INC.**          **CIVIL ACTION**

**VERSUS**                                      **NO. 07-0970**

**AL COPELAND INVESTMENTS, ET AL.**             **SECTION "K"(5)**


## ORDER AND REASONS

Before the Court is a Motion to Bifurcate Plaintiff's Separate and Independent Claims (Rec. Doc. 78) ("Mot."). The motion was filed by Defendants, Al Copeland Investments ("ACI"); Gulf Ventures Associates; Hotel Properties, Inc.; Alvin Copeland; Copeland's on New Orleans, Inc.; Restaurant Development Corporation of Louisiana, LLC; Gilbert E. Copeland, Sr.; Copeland's Cheesecake Bistro, LLC; Boutique Hotels, Inc.; Diversified Foods and Seasonings, Inc.; Al Copeland Properties, Inc.; Spicy Express, Inc.; North Rampart Corporation, Inc.; American International Franchisors Association, Inc.; and Dennis Raziano.[1] Plaintiff Interstate Restoration Group, Inc. ("Interstate") filed an opposition (Rec. Doc. 85) ("Opp.") to which Defendants filed a reply (Rec. Doc. 104).

## I. BACKGROUND

In the months following Hurricane Katrina, Defendant ACI executed three contracts with Interstate for "emergency drying, dehumidification, temporary shoring and

---

[1] Frank Lott, a named defendant in this lawsuit, does not join his codefendants in this motion to bifurcate the alter ego claims. *See* Rec. Doc. 78.

securing of buildings due to hurricane" for 15 separate properties. ((Rec. Doc. 1-2 ("Compl.") at 4-5). Companies owned by Al Copeland owned all but one of the properties, and his son, Al Copeland, Jr. owned the remaining property. (Mot. at 2). Gulf Ventures Associates, another company that was owned by Al Copeland, also entered a contract with Interstate for roof repair on the Landmark Hotel. (Mot. at 2). Interstate claims that the Defendants have failed to pay the full amounts owed for work performed under the contracts (*See* Compl. ¶¶ 5, 9, 13), and they recorded a lien against each of the properties with the office of the clerk and recorder for the parish where each property is located. (*See* Compl. ¶¶ 4, 8, 12). Because Mr. Copeland died, all of his assets are now part of his estate. (Mot. at 2).

Interstate filed suit with the 24th Judicial District Court in Jefferson Parish on December 13, 2006. (Compl.). Defendants subsequently removed the case to this Court on February 13, 2007.[2] (Rec. Doc. 1). They filed an answer and counterclaim the next day denying any liability and alleging that, *inter alia,* Interstate: (1) failed to perform its work in an efficient, expedient, and workmanlike manner; (2) failed to deal with the Defendants in good faith; (3) charged excessive amounts for the work performed; (4) damaged Defendants' buildings and systems; and (5) failed to pay for hotel accommodations and services provided by the Landmark Hotel. (Rec. Doc. 3 at 4-9, 15). On May 21, 2007, Interstate amended its complaint, adding the allegation that Al Copeland operated all of the defendant companies as a single business enterprise and is personally liable for the obligations of all of the defendant entities as his alter egos. (Rec. Doc. 14 ¶¶ 55-58). In the alternative, Interstate prays for a judgment declaring

---

[2] This case was transferred from Judge Peter Beer on April 27, 2009. (Rec. Doc. 107).

Defendants liable for the full sum by virtue of their unjust enrichment. (Rec. Doc. 14 at 3).

Interstate filed a motion to compel answers to discovery by ACI (Rec. Doc. 41), which Magistrate Judge Knowles granted on February 17, 2009. (Rec. Doc. 77). Later the same day, Defendants filed a motion to bifurcate the liability issues from the alter ego issue. (Mot.). The Defendants contend that bifurcating the claims would promote fairness and judicial economy because the alter ego issue will be moot unless any of them are held liable and then are unable to satisfy the judgment. (Mot. at 4). Interstate opposes the motion arguing that bifurcating the issues will prejudice it by delaying the outcome and increasing the cost to all parties. (Opp. at 4). Further, the Plaintiff argues that judicial economy cannot be served by separating the issues because a second trial is assured.[3] (Opp. at 5). On February 23, 2009, Defendants filed an appeal of Judge Knowles's order granting Plaintiffs' motion to compel discovery. (Rec. Doc. 84). In their memorandum supporting that appeal, Defendants urge, "If this Court issues an Order granting bifurcation, that Bifurcation Order would moot plaintiff's need for responses to its Interrogatories and Requests for Production, and the parties would not have to engage (at this time) in discovery issues relating to matters that will be bifurcated by this Court." (Rec. Doc. 84-2 at 3).

---

[3] Citing Defendants' memorandum in support of this motion to bifurcate, Plaintiffs argue that the Defendants have conceded that they owe money, but "less than $1,000,000.00." (Opposition at 5 *citing* Support at 3 n.1 ("Defendants will show that Interstate is owed less than $1,000,000.00.")).

## II. ANALYSIS

Federal Rule of Civil Procedure 42(b) provides, "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "When ordering a separate trial, the court must preserve any federal right to a jury trial." *Id.* "A motion to bifurcate is a matter within the sole discretion of the trial court, and the appellate court will not reverse the trial court's decision absent an abuse of that discretion." *First Texas Sav. Assoc. v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992), *citing Gonzalez-Marin v. Equitable Life Assur. Soc.*, 845 F.2d 1140, 1145 (1st Cir. 1992). The Fifth Circuit has recognized an important limitation on ordering a separate trial of issues under Rule 42(b): "[T]he issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice." *Swofford v. B. & W., Inc.*, 336 F.2d 406, 415 (5th Cir. 1964), *cert. denied*, 379 U.S. 962, (1965). Moreover, "even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992), *quoting Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989).

"Prejudice is the Court's most important consideration in deciding whether to order separate trials under Rule 42(b)." *Laitram Corp.*, 791 F. Supp. at 115. Judge Feldman emphasized the prejudicial effects of delays in *Laitram. Id.* In that case, the plaintiff claimed that calculators Hewlett-Packard manufactured and sold violated five

4

Laitram patents. *Id.* at 114. The defendant moved to bifurcate the issues of liability for infringement from damages and willful infringement arguing that the court should allow discovery on damages and willful infringement only after the first phase of the action, which defendants argued should be limited to issues concerning whether it had violated any of the plaintiff's patents. *Id.* The court denied the motion, commenting that "separate discovery phases would unduly prejudice *plaintiff* by unreasonably delaying the end of [the] case." *Id.* at 117 (emphasis in original). Instead, the court held that discovery would proceed on all issues. *Id.* at 115. Also, there would be a single trial before one jury, but it would be divided into three separate phases, the occurrence of the second two depending upon a finding of liability in the first phase. *Id.*

Passing on a motion to bifurcate alter ego issues from liability, Judge Vance also reinforced the importance that this court places on avoiding unnecessary delays in *Tidewater Marine, Inc. v. Sanco International, Inc.*, No. Civ. A. 96-1258, 1998 WL 131738 at *6 (E.D. La. Mar. 20, 1998). In *Tidewater*, the defendants moved to separate the issues of negligence liability from alter ego issues where an offshore tugboat sank after hitting an unlighted obstruction to navigation. *Id.* at *1. In support of their motion, the defendants argued that the business organization issue would only become relevant if defendants were held liable and were unable to satisfy the judgment. *Id.* at *6. Further, they argued that an order to bifurcate the issues would avoid potentially unnecessary discovery and trial preparation. *Id.* The court found bifurcation inappropriate, reasoning that, "[t]his unnecessary expense and delay outweighs any prejudice or harm that would result from unnecessary discovery and any potential confusion of trying all issues at once." *Id.* But, despite Judge Vance's ruling, Judge Mentz bifurcated the issue of alter

ego during trial.[4] *Tidewater Marine, Inc. v. Sanco Int'l*, 113 F. Supp. 2d 987, 990 n.1 (E.D. La. 2000).

However, the Tenth Circuit held in *Mandeville v. Quinstar Corp.* that the district court had not abused its discretion where it bifurcated the alter ego issue in a breach of contract claim. 109 Fed. App'x 191, 194 (10th Cir. 2004). The plaintiff in *Mandeville* brought suit against his former employer after he was fired for ERISA violations and a common law breach of contract claim. *Id.* at 193. Mandeville asked the district court to allow piercing of the corporate veil of Quinstar to recover against Quinstar's sole shareholder. *Id.* The court denied the motion, but when Mandeville obtained a judgment against Quinstar, the court set a second trial for consideration of the alter ego claim where it concluded that the corporate veil should be pierced. *Id.* at 193-94. Quinstar appealed the judgment, arguing that it was forced to defend itself against the prejudice resulting from the jury's knowledge that a judgment had previously been issued against it. *Id.* at 194. And, it argued, the second trial could not have been intended to promote judicial economy since bifurcation of the issues delayed the proceedings for six months. *Id.* The Tenth Circuit reasoned that the issues were clearly separable and that bifurcating the alter ego issues promoted judicial economy because "a trial on the issue of piercing the corporate veil would have been unnecessary absent a ruling in Mandeville's favor on the breach of contract or [ERISA] claim." *Id.*

The United States District Court for the Eastern District of Pennsylvania denied a motion to bifurcate alter ego issue in a breach of contract case. *Worldcom Techs., Inc. v.*

---

[4] Although Judge Mentz did not include any reason for bifurcating the issues in his opinion, having most likely completed discovery for both issues under Judge Vance's ruling, the plaintiffs were in no danger of prejudice from delays in alter ego discovery.

*Intelnet Int'l, Inc.*, No. CIV. A. 00-2284, 2002 WL 1971256 at *6 (E.D. Pa. Aug. 22, 2002). The plaintiffs in *Worldcom* alleged that the defendants failed to pay for telecommunications services according to a written agreement between the parties. *Id.* at *1. In support of a motion to bifurcate the alter ego claims, the corporate officers named as defendants argued that alter ego discovery would only become relevant if plaintiffs prevailed on the merits of the claim against the corporations. *Id.* at *6. The court denied the motion, reasoning that:

> Delaying discovery on the alter ego issues will only further compound the delays and expense already incurred in this case, filed over two years ago . . . . [F]urther delay creates the risk of prejudice to plaintiffs in the form of lost evidence, fading memories, and potentially dissipating assets to pay any judgment that plaintiffs might secure . . . . [T]he [defendants'] argument that depositions and litigation on the alter ego claims may not be necessary if [they] prevail on the merits does not outweigh the harm that plaintiffs would suffer if bifurcation were granted and plaintiffs prevailed against [defendants].

*Id.* The court also rejected the notion that the jury may become confused if the issues were to be presented in the same trial. *Id.* at *7.

In the instant case, the Court must balance two types of competing claims of prejudice. Interstate argues that it will suffer prejudice due to the considerable delay that will result if the Court orders separate trials and separate discovery periods. (Opposition at 3). The Defendants contend, as did the plaintiffs in *Laitram* and in *Worldcom*, that they will be prejudiced if the court does not separate the issues because the issues are complicated and potentially confusing to the jury. (Mot. at 6).

This court held in *Laitram* that an unreasonable delay in a case's resolution amounts to prejudice to the party opposing separation. *Laitram*, 791 F. Supp. at 116, *citing Apollo Computer*, 707 F. Supp. at 1435. This court has also considered the age of the case at the time of the motion to bifurcate claims when passing on the issue of

7

prejudice. *See Guedry v. Marino*, 164 F.R.D. 181, 186 (E.D. La. 1995) (commenting that separate trials would cause needless delay and prejudice, "especially due to the age of this case").

Moreover, unlike the underlying issue in *Laitram*, where the court separated the proceeding into three phases citing concern about the complexity of patent infringement issues, this issue in this case is a simple breach of contract. As such, this case is more like *Worldcom,* another breach of contract case, where the court held that the jury was not likely to be confused. This court has also held that jury instructions can solve these types of problems. *Guedry*, 164 F.R.D. at 186 (rejecting an argument that exposure to irrelevant evidence would confuse the jury because "any potential confusion to the jury can surely be remedied at trial through a limiting instruction by the Court."); *see also I-Systems, Inc. v. Softwares, Inc.*, No. Civ. 02-1951, 2004 WL 742082, at *18 (D. Minn. Mar. 29, 2004) (holding that "any potential confusion" in discerning liability and damages issues from alter ego issues "can be cured through the jury instructions and verdict form"). Thus, on balance, the issue of prejudice weighs in favor of hearing all of the issues in a single trial.

The Defendants claim that the issues to be bifurcated are completely separate issues with separate areas of discovery and proof. (Mot. at 5). Interstate argues that the issues are "interrelated and interwoven." (Opp. at 2). "Central to this question is the determination whether the issues would involve many of the same witnesses and documentary evidence." *Laitram*, 791 F. Supp. at 117. Interstate points out that Defendants alleged that "they did not enter into or authorize the agreements or contracts with Plaintiff, but that Plaintiff specifically contracted with Al Copeland Investments, for

whom the other defendants are not responsible." (Opp. at 1-2).  Undoubtedly, this means that the group of people who manage the defendant companies will be called as witnesses in the substantive claims and, because of their roles within the companies, the alter ego claim.  *See I-Systems*, 2004 WL 742082, at *18 ("[H]earing from each person once seems more efficient and practical than possibly hearing from each witness twice in two separate proceedings.").  Maintaining all claims in one action could keep these witnesses from being called to testify twice.  *Id.*  Thus, bifurcating the alter ego issue probably would not promote judicial economy.

On balance, this Court concludes that bifurcating the liability and business organization issues would be inappropriate in this case.  Given the age of this case, this Court concludes that bifurcation of the claims would most likely prejudice the non-moving party, Interstate, by unnecessarily delaying the final resolution.  Moreover, further delay increases the chance that fading memories and lost evidence will prejudice Interstate.  The Defendants' argument that litigation of the alter ego claim may not be necessary does not outweigh the harm that Interstate would suffer if bifurcation were ordered.  Also, any danger of juror confusion can be remedied through limiting instructions.   Therefore, Defendants' motion to bifurcate shall be denied.

## III. CONCLUSION

For the reasons stated herein, accordingly,

**IT IS ORDERED** that Defendants' Motion to Bifurcate Separate and Independent Claims (Rec. Doc. 78) is **DENIED**.

New Orleans, Louisiana, this __25th__ day of June, 2009.

```
                              _____
                                   STANWOOD R. DUVAL, JR.
                                UNITED STATES DISTRICT JUDGE
```